UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80093-CR-ROSENBERG

UNITED STATES OF AMERICA

vs.

ERIC RAYMOND BAHRE,
    a/k/a "Blaze,"
    a/k/a "DirtyMonte06,"
    a/k/a "DirtyMonte07,"
    a/k/a "DirtyMonte08,",

                  Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and Eric Raymond Bahre (hereinafter referred to as the "defendant") enter into the following agreement:

1.     The defendant agrees to plead guilty to counts 1 through 15 of the Indictment, all of which charge the defendant with distribution of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2) and (b)(1).

2.     The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart

from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range, the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the combined statutory maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that the Court must impose, as to each of Counts 1 through 15, a minimum term of imprisonment of five (5) years as to each count, and may impose a statutory maximum term of imprisonment of up to twenty (20) years as to each count, followed by a term of supervised release of five (5) years up to life. The sentences as to each count may run concurrently, or may be run consecutively for a total period of 300 years' imprisonment. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000. The Court may order forfeiture and must order restitution as outlined below.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, pursuant to Title 18, United States Code, Section 3013, a special assessment in the amount of $100 will be imposed on the defendant for each count for a total of $1,500. The defendant agrees that this special assessment shall be paid at the time of sentencing. If the defendant is financially unable to pay the special assessment, the

defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5. The defendant further understands and acknowledges that, pursuant to Title 18, United States Code, Section 3014, a special assessment in the amount of $5,000 will be imposed on the defendant as to each count if he is not indigent and is pleading guilty to offenses under Chapter 110 (relating to sexual exploitation and other abuse of children). The defendant agrees that this special assessment shall not be payable until the defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim-compensation arising from the criminal conviction, upon which this special assessment is based.

6. The defendant understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, pursuant to Title 18, United States Code, Sections 2259 and 2259A, the Court shall order the defendant to pay restitution because he is pleading guilty to an offense under Chapter 110. The parties agree that any restitution ordered by the Court under Title 18, United States Code, Sections 2259 and 2259A, shall include the defendant's total offense conduct.

7. Pursuant to Title 18, United States Code, Section 3663A(a)(3), the parties agree that restitution is not limited to Counts 1 through 15, the offenses of conviction in this case. The defendant agrees to pay restitution to any victims identifiable prior to the imposition of sentence, including victims of dismissed counts, relevant conduct, and any charged or uncharged child pornography offenses including material found on the defendant's digital devices or online accounts, which represents the full amount of those victims' losses as that term is defined in Title 18, United States Code, Section 2259(b)(3). The defendant further agrees that restitution is due pursuant Title 18, United States Code, Section 3663A(c)(1), for offenses and

identifiable victims who have suffered a physical injury or pecuniary loss other than those he is pleading guilty to, but nonetheless gave rise to this plea agreement.

8. The parties further understand and acknowledge that the amount of restitution the defendant will be ordered to pay will be calculated pursuant to Title 18, United States Code, Sections 2259 and 2259A. Specifically, the Court will first determine the full amount of each victim's losses that were incurred, or are reasonably projected to be incurred by the victim, as a result of the trafficking of child pornography depicting the victim. The parties understand and acknowledge that, once the full amount of the victim's losses is determined, the Court will then order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000. The parties further understand and acknowledge that any individual victim's total aggregate recovery shall not exceed the full amount of that victim's demonstrated losses.

9. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

10. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion

requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

11. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office, or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

12. The defendant agrees to forfeit to the United States voluntarily and immediately all of his right, title and interest to the following property, which is subject to forfeiture pursuant to Title 18, United States Code, Section 2253:

    A. iPhone 14 Pro Max (SN# DR45Q10GFK); and

    B. NZXT computer (SN# 012153062501049).

The defendant agrees that the above-listed assets represent: matter that contains a visual depiction of child pornography, which was produced, transported, mailed, shipped, or received in violation of Chapter 110 of Title 18 of the United States Code; or, property used or intended to be used to commit, facilitate, or promote the commission of the offense as alleged in Counts 1 – 15 of the Indictment.

13. The defendant further agrees to fully cooperate and assist the Government in the forfeiture of the listed property and to take whatever steps are necessary to pass clear title to the United States, including, but not limited to, the surrender of documents of title, execution of any documents necessary to transfer his interest in the above property to the United States, execution of a consent to forfeiture or other documents as may be needed to fully accomplish the forfeiture and vest title in the United States. The defendant further knowingly and voluntarily waives the following rights as to property subject to forfeiture: (1) all constitutional, legal and equitable defenses to the forfeiture of the assets in any judicial or administrative proceeding; (2) any judicial or administrative notice of forfeiture and related deadlines; (3) any jeopardy defense or claim of double jeopardy, whether constitutional or statutory; (4) any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the property by the United States; and (5) any right to appeal any order of forfeiture entered by the Court pursuant to this plea agreement. The defendant further

understands that the forfeiture of the property shall not be treated as satisfaction or offset against any fine, restitution, cost of imprisonment, or any other penalty this court may impose on the defendant.

14. The defendant understands that by pleading guilty, he will be required to register as a sex offender upon his release from prison as a condition of supervised release pursuant to Title 18, United States Code, Section 3583(d). The defendant also understands that independent of supervised release, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout the defendant's life. The defendant understands that he shall keep his registration current, shall notify the state sex offender registration agency or agencies of any changes to the defendant's name, place of residence, employment, or student status, or other relevant information. The defendant shall comply with requirements to periodically verify in person the defendant's sex offender registration information. The defendant understands that he will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements. The defendant further understands that, under Title 18, United States Code, Section 4042(c), notice will be provided to certain law enforcement agencies upon the defendant's release from confinement following conviction.

15. As a condition of supervised release, the defendant shall register with the state sex offender registration in the state of Florida and shall also register with the state sex offender registration agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer. The defendant shall comply with all requirements of federal and state sex offender registration laws, including the requirement to update the defendant's

registration information. The defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment.

16. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 8/21/2023   By: *Gregory Schiller*
GREGORY SCHILLER
ASSISTANT UNITED STATES ATTORNEY

Date: 8/18/23   By: _____
MICHAEL R. OHLE
ATTORNEY FOR THE DEFENDANT

Date: 8/18/2023   By: _____
ERIC RAYMOND BAHRE
DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80093-CR-ROSENBERG

UNITED STATES OF AMERICA

vs.

ERIC RAYMOND BAHRE,
    a/k/a "Blaze,"
    a/k/a "DirtyMonte06,"
    a/k/a "DirtyMonte07,"
    a/k/a "DirtyMonte08,",

        Defendant.
_____/

## FACTUAL PROFFER

The United States of America and Eric Raymond Bahre ("Defendant" or "Bahre") agree that if this case had gone to trial, the United States would have proven the following facts beyond a reasonable doubt:

1. A HSI West Palm Beach Special Agent acting in an undercover (UC) capacity online on the mobile messaging application Kik to detect and investigate violations of federal law related to the sexual exploitation of children. The UC assumed the persona of a 28-year-old female with an 8-year-old daughter. The UC monitored numerous chatrooms created for individuals to discuss "taboo" sex, family incest, child pornography, and the like.

2. The UC observed user "DirtyMonte06," with the display name "Blaze," was in a "taboo" chatroom where individuals were discussing types of pornography they liked. "DirtyMonte06" then private messaged the UC on April 20, 2023, at approximately 5:57 P.M.: "I like young too just can't say it in group unfortunately." "DirtyMonte06" had a profile photo of a white male with brown hair and facial hair, wearing a plaid shirt. He appeared to be in his late

30s or early 40s. "DirtyMonte06" was later identified as Eric Raymond BAHRE, a 40-year-old resident of Massachusetts, and United States Postal Service letter carrier.

3. BAHRE continued communication with the UC via private message. He stated he liked "0+" (referring to the age of children) and that he was from Massachusetts. He claimed he once ejaculated on his nephew from Texas when his nephew was 11 months old. BAHRE said the UC should be "playing with her", referring to the UC's 8-year-old daughter.

4. BAHRE continued to correspond with the UC through April 25, 2023, during which he sent the UC a video of an adult male ejaculating on an unknown-aged, white female's vagina. BAHRE messaged about the video, "This looked hot, not sure how old but def yng". The UC attempted to respond to BAHRE, however Kik did not allow the UC to respond or contact BAHRE.[1]

5. Before April 29, 2023, BAHRE re-initiated contact with the UC via private message using the Kik username "DirtyMonte07", display name "Blaze", and the same profile photo as "DirtyMonte06". BAHRE told the UC that Kik "banned" his other account for posting videos, and he had to make a new account. BAHRE told the UC how it had been difficult to find child pornography on Kik lately. He then invited the UC into a Kik chatroom that he recently joined, as he said people were sharing all types of pornography in this chatroom and that maybe there would be child pornography in there. The UC joined this chatroom and BAHRE advised the UC would probably get "bombarded" with private messages. BAHRE then sent the UC what is known as a "live" Kik video.[2] The live video was a fourteen-second recording of himself,

---

[1] This can occur if BAHRE were to block the UC or if Kik banned or reported BAHRE's account.
[2] When Kik users take and send a new photo or video using the camera within the Kik application rather than an old/already-existing photo or video, the Kik application adds the word "Camera"

including his face. BAHRE was identified as the same male seen in the Kik profile photo. In the video, BAHRE was wearing a black t-shirt and was inside what was later identified as his home. In the video, he continued the conversation with the UC about how it had been difficult to find child pornography on Kik. In the video, he advised that when he searched for chatrooms that contain child pornography, he would use particular search terms.

6. BARHE messaged the UC about other applications where the UC could meet like-minded people. He then sent another video of himself talking while driving, stating that his favorite porn was "young" and "public, piss, lactation... I really have no limits. Everything's hot. Everything." Then via text message, BAHRE stated that his favorite age range for young was "3-9" as it was a "great age, very fuckable".

7. (COUNT 1) On the same date, April 29, 2023, BAHRE distributed several child pornography videos to the UC via Kik, as follows:

    a. at 1:16 P.M., BAHRE sent a nine second video of an approximately 10-year-old white juvenile female in a blue tank top, performing oral sex on an adult male;
    b. at 2:12 P.M., BAHRE sent a forty-seven second video of an adult white male having anal sex with a prepubescent white juvenile female in a white dress;
    c. at 2:15 P.M., BAHRE sent an eighty-six second video of an approximately 8-year-old fully nude white juvenile female. She performed oral sex on an adult white male while in the shower. The male then ejaculated in the child's mouth.
    d. at 2:17 P.M., BAHRE sent a twelve second video of an approximately 5-year-old fully nude tan-skinned juvenile female. While on her hands and knees being vaginally penetrated by an adult white male, she performed oral sex on a different adult white male.
    e. at 2:19 P.M., BAHRE sent five videos and one image: the <u>first</u> was eighteen seconds and depicted an adult white male ejaculating in a 12-year-old tan-skinned juvenile female's mouth who wore a black shirt; the <u>second</u> was twenty-nine seconds and depicted a fully nude prepubescent white juvenile female laying on her back while an adult white male inserted his erect penis in her mouth; the <u>third</u> was forty-two seconds and depicted a toddler-aged white juvenile female, laying facedown while a nude, adult white female wearing a

---

under the photo or video that the Kik user sent. If a Kik user receives a photo or video from someone and it says "Camera" underneath it, the Kik user knows that the photo or video was just taken in real time. Kik users often request live photos or videos from one another to prove that the other user is a "real" person.

strap-on dildo-penis anally penetrated her. While doing so, the adult female smacked the child's buttocks, pushing the child's body back down, pushing the child's head down, holding the child's neck, and pulling the child's hair as the child tried to move. At the end of the video, the adult female flipped the child over and exposed the child's vagina and anus for the camera; the fourth was ninety seconds and depicted a 12-year-old fully nude white juvenile female wearing a masquerade mask while on her knees while performing oral sex on an adult white male; the fifth was forty-five seconds and depicted a 3 to 4-year-old Asian juvenile male who was lying on his back on a bed while looking at a phone, while an adult female in a green shirt performed oral sex on the child.

8. After the barrage of videos, BAHRE messaged that his favorite video was the "mother and her daughter with the strap on". He then added that he hoped one day he could live out his fantasy, and that his soon-to-be niece will be born in Texas. BAHRE then sent more videos of himself talking to the UC while on video camera while inside of his residence.

9. On April 30, 2023, at approximately 11:33 A.M., BAHRE sent the UC a video from the window of his residence and stated in the video, "Yes, it's a good day to be a perv. I'm not going out in that. What can I do?" BAHRE also messaged that he worked as a letter carrier for the USPS and has been doing so for about one year.

10. (COUNT 2) On May 1, 2023, BAHRE messaged the UC that "Everyone should get off first thing in the morning, either by sex, pleasure themselves or be woken up by someone giving you head. Even better to have a nice 6yr waking us up that way". He then distributed a sixty-three second video of a white juvenile female who appeared to be under the age of thirteen. The juvenile was straddled over a fully nude adult white male who was kissing her while his hand was inside of her underwear as he was rubbing her buttocks. BAHRE sent the video with the following message: "Fun for you later".

11. (COUNT 3) On May 2, 2023, BAHRE sent a video in which he was seen see him walking past a computer in his home with a paused pornography video on the screen. He then sent a fifty-nine second video that depicted 12- to 14-year-old white female who pointed the

camera at her vagina while she masturbated. BAHRE messaged the UC with the video, "Not the age I prefer but she hot. Gonna be [your daughter] for you".

12. At approximately 6:11 P.M., the UC received a private message from "DirtyMonte08", the display name "Blaze", and the same profile of BAHRE's previous accounts. The user stated that he got "booted" again. The UC asked if he posted "young" videos again today. BAHRE replied, "I shared one in a group I just got added to, they guy who added me said it was fine. I was gonna see how it was and add you."

13. (COUNT 4) On May 4, 2023, BAHRE messaged, "I'm still laying in bed, perving a bit before I get up and make breakfast." The UC asked if it was anything good. BAHRE then said, "Just this," and sent a thirty-two second video that depicted a 6 to 8-year-old white female, straddled over a fully nude adult white male on a bed as he vaginally penetrated her. The child often grimaced while he penetrated her. After sending the video BAHRE wrote, "She's hot. Would love to have you having u helping her ride me". He also wrote, "I wonder what the rest of the video is like. Made me pretty hard".

14. On May 6, 2023, BAHRE messaged that a couple of "nice vids were shared in the group". Around the same time, four child pornography videos were shared in the Kik chatroom that both the UC and BAHRE were members of. Approximately 20 minutes later, BAHRE sent the UC a video of himself masturbating. The UC asked to what he masturbated, to which BAHRE responded, "Those two hot vids" and then, "Love the girl using the tooth brush, and the picture with mom spreading her sons ass, would be hot seeing mom using strap on him". This accurately described two of the four videos noted above.

15. (COUNT 5) On May 7, 2023, BAHRE distributed child pornography to the UC:

a. at 4:12 P.M., BAHRE sent two videos, including an eleven-second video of a 5-year-old female sitting on a stairwell as an adult male forced his erect penis in the child's mouth while holding her head;

b. at 6:51 P.M., BAHRE sent two videos, including a seventy-second video of a blonde female teenager performing oral sex on a less than 10-year-old male.

16. (COUNT 6) On May 8, 2023, BAHRE sent a fifty-nine second video of a white pre-pubescent juvenile female, nude from the waist down, on her hands and knees on a bed while a nude adult white male vaginally penetrated her from behind.

17. (COUNT 7) On May 9, 2023, BAHRE distributed child pornography to the UC:

a. at approximately 4:51 P.M., BAHRE sent a forty second video of a toddler-aged nude female as an adult male rubbed his penis and then ejaculated on the child's vagina;

b. at approximately 6:29 P.M., BAHRE sent two videos, including a seventeen-second-long video of a 10-year-old white female performing oral sex on a nude adult white male in bed;

c. at approximately 7:37 P.M., BAHRE sent the UC a video of himself masturbating and ejaculating, and then sent four videos including one that was eighty seconds long and depicted a less-than 5-year-old white female who was nude from the waist down and appeared to be falling asleep as a nude adult white male put his penis in her mouth and ejaculated. After sending, BAHRE wrote, "So fucking hot right?" and "Those vids will give you inspiration with [your daughter]".

d. at approximately 10:15 P.M., BAHRE sent a fifty-second video of a 6-year-old white female with an adult white male's penis ejaculated in her mouth.

18. (COUNT 8) On May 10, 2023, BAHRE sent a video of an 8-year-old white nude lying on her back while an adult female performed oral sex on the child. BAHRE messaged that he had, "seen that one a bunch" and "she was doing a Skype show". During the same night, BAHRE asked the UC how she became, "interested in young." After the UC responded, BAHRE replied with the story of how he became "interested in young": "I was talk to somebody years ago on Yahoo messenger I was like 22. She randomly sent me a photo of some 11 n 12 I liked it".

19. (Count 9) On May 11, 2023, BAHRE messaged the UC and said, "I've been perving all morning" and distributed child pornography to the UC:

a. at approximately 11:57 A.M., a video was of a nude 12-year-old white female and recording herself while masturbating.

b. at approximately 2:12 P.M., a forty-four second video of a nude 5-year-old white female, lying on her back on a table as an adult white male anally penetrated her.

Later BAHRE suggested that the UC get a strap-on sex toy to use on her 8-year-old daughter.

20. (Count 10) On May 12, 2023, BAHRE sent three videos, including one that was forty-four seconds long and depicted a fully nude 8-year-old white female holding a camera while a male was vaginally penetrating her with his erect penis.

21. (Count 11) On May 13, 2023, BAHRE sent five videos throughout the day, including a seventy second video that depicted a 5-year-old white female performing oral sex on an adult male while in a bathroom.

22. (Count 12) On May 15, 2023, BAHRE sent a Mega link to the UC, which brought the UC to a folder named "wtf" that was a total of 10.06 GB. There were six sub-folders entitled, "13-17" (127 files), "adolescents" (39 files), "Cp 4 vanessa" (260 files), "Teen Sex" (207 files), "teen80" (121 files), and "Telegram Video" (152 files). The folders contained many videos of child pornography. Later that day, BAHRE sent a one-minute video of a nude 6-year-old white juvenile female masturbating an adult male's erect penis until he ejaculated.

23. (Count 13) On May 16, 2023, BAHRE sent four videos to the UC and wrote "Enjoy [UC]! Something for you to unwind with after work today". For example, one of the videos was about two minutes long and depicted a fully nude pre-pubescent female laying on her back on a bed, performing oral sex on a fully nude adult white male while he vaginally penetrated her with a sex toy. BAHRE sent additional child pornography videos over the next three hours and then wrote, "I hope you enjoy it all. I got off pretty hard on it, I know you will to".

24. (Count 14) On May 17, 2023, BAHRE sent approximately ten (10) videos, including one of the videos was about fifty-two seconds long and depicted two fully nude white juvenile females and one fully nude white juvenile male, all who were pre-pubescent. An individual was recording them while one of the females performed oral sex on the male child.

25. (Count 15) On May 21, 2023, BAHRE sent a two-minute video of an adult white female in lingerie performing oral sex on a fully nude pre-pubescent white female.

26. BAHRE continued to maintain communication with the UC until after his indictment on May 52, 2023, and continuing through his arrest on June 7, 2023. Throughout the communication, BAHRE sent many videos of himself talking to the UC while inside of his residence, on his front lawn, in his moving vehicle, and while working as a USPS letter carrier while in the mail truck. His USPS uniform was clearly visible in the videos.

27. HSI confirmed BAHRE's identity and the person residing at 109 Lockhouse Rd., Apt. A, Westfield, MA 01085. USPS confirmed that BAHRE has been a City Carrier Assistant at the South Hadley Post Office in South Hadley, MA since May 7, 2022.

28. Subpoena responses from Kik for the DirtyMonte06, DirtyMonte07, and Dirtymonte08 accounts confirmed all the accounts utilized IP address: 76.119.241.40. Comcast advised that this IP address was leased to a person residing at 109 Lockhouse Rd., Apt C, Westfield, MA 01085 (this is BAHRE's neighbor whom BAHRE shared internet with). Kik also provided that the DirtyMonte06 account was created with an email of e.bahre@gmail.com; DirtyMonte07 created with an email of Dirtymonte06@gmail.com; and DirtyMonte08 created with an email of Dirtymonte08@gmail.com.

29. Google confirmed that the three (3) Gmail accounts were all created with the name, "E Bahre" or "Eric Bahre." The dirtymonte06@gmail had a recovery email of

ebahre@gmail.com. The e.Bahre@gmail and dritymonte08@gmail accounts had the same recovery email: saucemaster82@yahoo.com. All three email accounts utilized the same recovery phone number. The billing info and customer data for the e.bahre@gmail.com account includes the same address for BAHRE that is on his driver's license and that USPS provided to HSI.

30. On June 7, 2023, at approximately 0641 hours, HSI SA Aisha Rahman conducted an audio-recorded interview with Eric BAHRE while on scene of the execution of the arrest warrant and search warrant at his residence at 109 Lockhouse Rd., Apt. A, Westfield, MA. After waiving his *Miranda* rights, BAHRE advised he has been residing at 109 Lockhouse Rd., Apt. A, Westfield, Massachusetts for the last ten years and has always resided alone. BAHRE has been employed as a letter carrier or mailman with the United States Postal Service for the last year. Prior to that, he was a chef.

31. BAHRE confirmed the cell phone number connected to the Kik and Gmail accounts and is active on the iPhone 14 Pro Max found in his possession. He has had this phone for several months. He provided his email addresses of e.bahre@gmail.com and saucemaster82@yahoo.com. BAHRE advised he has used Kik username "DirtyMonte08", and later in the interview, he also provided his previous Kik usernames of DirtyMonte06, DirtyMonte07, and Montec82. BAHRE explained that the "Monte" reference in all his usernames is because he used to have a Monte Carlo and his friend used to call him "monte".

32. BAHRE stated that he has been messaging with the female UC in this case on Kik from his DirtyMonte account for the last two to three months. He explained that he met her in a "taboo" pornography chatroom and began chatting with her outside of the chatroom. BAHRE said that he lied when he told the UC that he had a sexual experience with his 2-year-old nephew from Texas, and that he has never committed any of sexual acts with a child. BAHRE admitted

sending the child pornography videos. When asked if he knows what child pornography is, he explained it to be, "videos of minors being involved in acts with adults". He was unsure of how many child pornography videos he sent to the UC and said "maybe twenty" videos but that he does not keep track.

33. BAHRE stated that he only seeks and locates child pornography in the Kik application by entering chatrooms and talking to people. He said, "You have to be in groups where people send videos like bestiality or incest porn, and you talk to people". He added that users will share Mega Links on Kik with child pornography, and that he has some of these Mega Links saved in the Notes section of his phone. BAHRE denied saving the videos; he views them or distributes them on the Kik application.

34. BAHRE said that he first encountered child pornography around nine or eleven year ago when it was posted in a Kik chatroom. He stated that he clicked on it and "I don't know why. Something about it was the next thrill. Unfortunately, been interested in it since". BAHRE said he is interested in "all ages I guess. It's hard to specifically say. It depends on my mood or what I'm feeling." When questioned about the messages he wrote to the UC about liking anything from "zero plus" but that "3 to 9" was his favorite, BAHRE responded, "Yeah, it's just my mood depending on the day. I did say those things. In real life I don't think I could ever really do it. It's just my mood when I'm turned on in that mindset. It can be zero (0) to nine (9), three (3) to nine (9), six (6) to eleven (11), twelve (12). It's different every day. It's more of a fantasy. It's not something I could ever actually do." BAHRE said he is turned on by child pornography because of "the fact of how wrong it is".

35. BAHRE admitted that he knew the possession of child pornography was illegal: "I understand. I do know I broke the law." He also admitted to agents that he knew the children

in the videos he distributed were real: "I do. I know it's wrong. I have no excuse. I'm ashamed of myself every time I see it. I just don't know why."

36. BAHRE stated that he has also distributed videos of child pornography to other individuals on Kik.

37. Based on these facts and other information known to the parties, BAHRE agrees that, had this case gone to trial, the government would have proven beyond a reasonable doubt, as to Counts 1 through 15 of the Indictment, that BAHRE distributed child pornography in violation of Title 18, United States Code, Section 2252A(a)(2) and (b)(1), such that:

   a. the Defendant knowingly distributed an item or items of child pornography;
   b. the item or items of child pornography had been received using any means or facility of interstate or foreign commerce or had been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; and
   c. when the Defendant received the items, the Defendant believed the items were or contained child pornography.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 8/21/2023    By: *Gregory Schiller*
                       GREGORY SCHILLER
                       ASSISTANT UNITED STATES ATTORNEY

Date: 8/18/23      By: *[signature]*
                       MICHAEL R. OHLE
                       ATTORNEY FOR THE DEFENDANT

Date: 8/18/23      By: *[signature]*
                       ERIC RAYMOND BAHRE
                       DEFENDANT